IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA T., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 4859 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Patricia T.[3] was 61 years old when she applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (R. 302, 334.) She alleges that she has been disabled since her alleged onset date ("AOD") of October 30, 2017, because of rheumatoid arthritis ("RA"), hypertension ("HTN") and allergies. (R. 338.) After a hearing on January 8, 2019, an

---

[1] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On August 9, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 9.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

Administrative Law Judge ("ALJ") issued an opinion on January 30, 2019, finding Plaintiff not disabled at Step Two of the sequential analysis on the ground that Plaintiff did not have a severe impairment. (R. 70-80.) After receiving additional evidence from the Plaintiff, the Appeals Council denied review (R. 1-7), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021). Before the Court are Plaintiff's motion seeking remand of that decision (D.E. 16) and the Commissioner's cross-motion to affirm. (D.E. 25.)

## I.   LEGAL STANDARD

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. In making this determination, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotations omitted). The ALJ here found that Plaintiff did not have a severe impairment at Step Two of the sequential analysis. Therefore, the ALJ did not address the remaining analytical steps, including whether Plaintiff's impairments met a Listing, whether she was able to perform her past work, or, if she was not able to perform her past work, whether her residual functional capacity ("RFC") allowed her to work at other jobs that existed in significant numbers in the economy. As we explain below, while we are remanding this case because we find the ALJ did not support with substantial evidence his Step Two determination that Plaintiff did not have a severe impairment,

2

our decision may have been different if the ALJ had found Plaintiff not disabled after correctly undertaking a full, five-step evaluation.

Generally, "the step two determination of severity is 'merely a threshold requirement.'" *Castile v. Astrue,* 617 F.3d 923, 926–27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). *See also Bowen v. Yuckert,* 482 U.S. 137, 149–50 (1987) (disability insurance benefit payments require a "threshold showing of medica severity.") That is, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process...." *Id.*

An impairment or combination of impairments is "severe" pursuant to the Social Security regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1522, 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p.[4] Therefore, we must determine whether the ALJ's Step Two determination that none of Plaintiff's impairments caused more than a minimal effect on her ability to perform basic work activities was supported by substantial evidence.

## II.     ADMINISTRATIVE RECORD

### A.     Medical Evidence

Plaintiff worked as an activities aide in a nursing home until her AOD. She was first diagnosed with RA in 2008, and except for briefly taking the medication Methotrexate, which she

---

[4] Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b). *Madrid v. Astrue*, No. 09 C 5120, 2011 WL 528810, at *1 (N.D. Ill. Jan. 25, 2011).

stopped because of side effects, she did not seek treatment or take any prescription medication for her condition until 2017. (R. 153.) In August 2017, two months before her AOD, Plaintiff visited Cook County Health to obtain more medication for her HTN; at her appointment she also complained of pain and stiffness in her shoulders, elbows, wrists, hands, and right hip and knee, as well as headaches and pain and redness in her eyes. (R. 160-161.) On examination, Plaintiff's right wrist had minimal swelling and pain with range of motion and there was no synovitis (joint swelling) in her hands. (R. 164.) Movement of her shoulders, right hip, and knee elicited pain. (*Id.*) Plaintiff was referred to rheumatology and prescribed a short course of prednisone (a steroid) to be replaced by NSAIDs (non-steroid anti-inflammatory medication) after a few weeks. (R. 165.) An X-ray of her wrists and hands taken in August 2017 showed "complete loss of the radiocarpal joint space bilaterally as well as the carpal joint spaces." (R. 415-416.) The findings were assessed as similar in appearance to X-rays taken in April 2008, (which are not part of the record) and considered suggestive of RA. (*Id.*)

On November 3, 2017, Plaintiff returned to Cook County Health for a refill of her blood pressure medication; she reported still having pain in her hands and wrists and that her wrists got swollen "on/off." (R. 166.) On examination her wrists showed no swelling but were painful with movement. (R. 170.) Plaintiff had not yet seen a rheumatology specialist because she had not gotten a phone call to schedule it, so she was directed to make the appointment herself. (*Id.*) On November 27, 2017, Plaintiff had the rheumatology appointment, which noted that her RA had been untreated since 2008 and that she was complaining of worsening pain. (R. 189.) Examination notes state that a recent X-ray showed "damage to wrist joints already" and that Plaintiff reported mild limitation in her ability to perform daily activities. (*Id.*) She had no swollen hand joints, but several were tender, and there was some swelling in both wrists. (R. 191.)

Bloodwork revealed elevated cyclic citrullinated peptide, which is a protein antibody present in the majority of patients with RA. The medical impression was that Plaintiff's condition and pain were worsening; she was prescribed the immunosuppressant leflunomide. (R. 192.)[5]

The next medical records are dated February 2019 – after the ALJ's opinion of January 30, 2019 - when Plaintiff visited Cook County Health complaining of pain, blurriness, and tearing in her left eye. (R. 172.)[6] At an appointment on February 1, 2019, Plaintiff reported that she had been off all her medications for RA for one year. (*Id.*) At a follow-up appointment a week later, she was diagnosed with nodular scleritis, which is an inflammatory eye condition often associated with underlying auto-immune disease. (R. 175.) She was prescribed the NSAID indomethacin and referred to her primary doctor and rheumatology for follow up. (*Id.*) At her follow-up appointment with rheumatology on February 11, both of Plaintiff's wrists had mild tenderness with restricted extension due to pain; there was no swelling and she had full strength. (R. 45.) Plaintiff reported to her rheumatologist that the pharmacy had been out of the NSAID; she was prescribed the steroid prednisone, which caused her to be jittery but improved her eye pain by 80 percent and also helped her joint pain. (R. 47, 179-180.) On February 21, 2019, Plaintiff's nodular scleritis was mostly resolved and her medications were reduced; she was instructed to return in two weeks for a follow-up appointment. (R. 183.)[7]

---

[5] In all medical records discussing Plaintiff's RA, it is described as "not well-controlled" without any elaboration.

[6] Plaintiff did not have medical treatment in 2018 because she testified that she moved to Detroit to care for her nephew and had trouble establishing care there because of difficulty finding a doctor and also because she was mildly depressed. (R. 199.)

[7] The 2019 medical records also appear in the administrative record at pp. 14-34 as the additional evidence Plaintiff submitted to the Appeals Council.

The record contains several medical opinions, all from Agency doctors. On December 20, 2017, Marion Panepinto, M.D., reviewed the medical record as part of Plaintiff's claim for benefits. She opined that Plaintiff's arthritis and hypertension were both severe impairments and that she had an RFC that limited her to occasionally lifting 20 pounds, frequently carrying 10 pounds, sitting, standing and/or walking about six hours in an eight-hour day and unlimited pushing and pulling. (R. 223-224.) Dr. Panepinto also opined that Plaintiff had limited ability to engage in fine or gross manipulation and could do those actions occasionally. (R. 225.) Dr. Panepinto based her RFC on Plaintiff's August 2017 X-rays of her hands and wrists, noting that they showed a complete loss of radiocarpal joint space bilaterally as well as carpal joint spaces suggestive of RA, and that recent examinations had shown synovitis of both wrists. (R. 225.) She further described several of Plaintiff's examinations, including one from August 2017 and two from November 2017 (on November 3 with a general practitioner and on November 27 with a rheumatologist), during which Plaintiff complained of worsening joint pain in her hands and wrists, and pain on flexion and extension. (*Id.*) Dr. Panepinto ultimately opined that Plaintiff was able to perform her past work as a life enrichment manager, which the doctor characterized as a light exertion job, and that therefore she was not disabled. (R. 226.)

On June 17, 2018, Agency doctor Jose Rabelo, M.D., opined that he agreed with the prior RFC that limited Plaintiff to light work with additional manipulative restrictions because of her RA. (R. 479.) He noted that medical records from November 27, 2017, suggested that Plaintiff had mild limitations in activities of daily living and morning stiffness with an otherwise negative review of systems except for joint pain. (*Id.*) Dr. Rabelo ultimately concluded that Plaintiff was able to perform her past work. (*Id.*) On June 18, 2018, Jose Figueroa, M.D., agreed with this opinion without additional comment. (R. 480.)

6

**B.   Hearing Testimony**

At the hearing, Plaintiff testified that she quit her job as a life enrichment manager in a nursing home because she was in too much pain in her wrists, shoulders, and back and could no longer push wheelchairs or lift residents. (R. 207-208.) She took Tylenol for the pain when she was working. (*Id.*) After she quit her job on her AOD, Plaintiff did not go to the doctor because she was planning to move to Michigan and then once there, was depressed and had trouble establishing medical care. (R. 209.) Her back, shoulders, and wrists continued to hurt, and she continued to take Tylenol as needed. (*Id.*) Plaintiff testified that she could pick up a cup of coffee without pain but that carrying a gallon of milk would be painful, but possible. (R. 210.) She was able to dress herself, including putting on earrings, and still took Tylenol every couple of days as needed, which helped with the pain in her wrists, shoulders and back. (R. 211-212.)

A vocational expert ("VE") also testified at the hearing. He stated that Plaintiff's past work would be categorized as an activity aide, which was a job with medium physical demand as listed and as Plaintiff performed it. (R. 214.)

**C.   ALJ Opinion**

The ALJ undertook the five-step process for determining disability. 20 CFR § 404.1520(a). At Step Two, however, he determined that Plaintiff had the medically determinable impairments of rheumatoid arthritis, hypertension, obesity, and allergies, but that none of these impairments was severe because none of them significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months; therefore, he ended his inquiry there and found Plaintiff not disabled. (R. 75.) As relevant to our decision, the ALJ explained that the evidence described a condition – rheumatoid arthritis – that Plaintiff had lived and worked with since 2008 and that there was little support for Plaintiff's contention that it worsened or became severe as of

7

her AOD to the extent that it prevented her from engaging in basic work activities as listed in SSR-85-28.[8] (R. 77.) The ALJ acknowledged that Plaintiff's long and consistent work history supported a finding that her allegations about the severity of her impairment were credible but that other factors eroded her credibility. (R. 79.) Specifically, in finding Plaintiff's allegations about the severity of her RA symptoms to be not entirely credible, the ALJ first pointed to Plaintiff's activities of daily living, including that she could prepare simple meals, take care of her personal grooming (albeit while experiencing some pain), clean, do laundry, iron, and shop for food when needed, but that she had limited her social interactions due to pain. (R. 76-77.) The ALJ noted that Plaintiff testified that she was able to dress herself, including putting on earrings, pick up a cup of coffee without issue, and lift a gallon of milk, although to do so was painful. (*Id.*) The ALJ further pointed to the lack of change in Plaintiff's X-rays from 2008 to 2017; the absence of treatment for a number of years; her report to her rheumatologist in November 2017 that although the pain in her wrists and hands had worsened, it caused only mild limitations on her ability to perform daily activities; her failure to follow up with her rheumatologist as directed; and the fact that she testified that Tylenol managed her pain. (R. 78.)

The ALJ acknowledged that the only medical opinions in the record opined that Plaintiff's RA was a severe impairment but found these opinions unpersuasive because they appeared to be based entirely on treatment notes from Plaintiff's November 27, 2017, rheumatology appointment. And while the ALJ found this reliance reasonable given the proximity of that examination to the date the opinions were made, he noted that the opinions did not (and could not, given their date), account for the fact that Plaintiff subsequently did not take the anti-inflammatory medication prescribed at the November appointment and instead relied on Tylenol to manage her pain, and

---

[8] These activities include, for our purposes, physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.

also did not seek any additional medical treatment for over a year. (R. 79-80.) Finally, the ALJ also found Dr. Panepinto's opinion to be unreliable because she found Plaintiff's hypertension to be a severe impairment despite the fact that Plaintiff alleged no limitations resulting from her blood pressure. (*Id.*)

### D. Appeals Council

After the ALJ issued his decision finding Plaintiff not disabled, she submitted to the Appeals Council a brief from her attorney arguing that the ALJ erred in finding her impairment not severe (R. 399-402) as well as additional evidence consisting of 82 pages of treatment records from Austin Health Center dated April 7, 2017, through February 21, 2019 and 82 pages from John H. Stroger Hospital dated January 28, 2019 through February 21, 2019. (R. 2.) The Appeals Council subsequently denied Plaintiff's request for review, stating that it considered her attorney's brief and "exhibited it" but that her reasons did not provide a basis for changing the ALJ's decision. (R. 1.) With respect to the additional evidence Plaintiff submitted (which she mentioned requesting but did not discuss in her attorney's brief because she had not received it yet), the Appeals Council stated that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (R. 2.)[9]

## III. ANALYSIS

In determining that we must remand the case, we recognize the rather meager medical evidence in the record. If the ALJ had decided this case after engaging in the full five-step analysis, it is possible that our decision would have a different result. But several mistakes relate

---

[9] "Exhibited" evidence is evidence upon which a finding and decision are based. However, the AC may receive additional evidence that it does not consider in relation to the ALJ decision because it is not new, material, or related to the period on or before the hearing decision, or the claimant does not meet one of the good cause exceptions set forth in 20 CFR 404.970(a)-(b) and 416.1470(a)-(b). https://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-20.html.

specifically to whether there is substantial evidence that Plaintiff has a severe impairment – particularly because of her RA – and these mistakes require remand.

### A. Substantial Evidence Does Not Support the ALJ's "Not Severe" Finding.

The Commission's commentary on rule SSR 85-28 explains the ALJ's role in applying the "not severe" standard:

> "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience."[10] https://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html *last visited on* March 30, 2022.

In this case, the evidence the ALJ relied on to conclude that Plaintiff's RA was not severe was faulty, and thus it was an error to dismiss the case at Step Two.

Our first basis for remand is that the ALJ did not rely on substantial evidence to reject the only medical opinions in the record, which found that Plaintiff's RA and hypertension were severe and assigned her an RFC to do light work with manipulative restrictions. One reason the ALJ rejected the opinion was that he believed Dr. Panepinto based her determination on only a single medical record from November 27, 2017; this is incorrect. Instead, the doctor considered *at least three* medical records in which Plaintiff complained of worsening pain, as well as Plaintiff's August 2017 X-rays, before determining that Plaintiff's RA was severe and assigning her an RFC

---

[10] The ALJ also discounted Dr. Panepinto's opinion as unreliable because she found Plaintiff's HTN to be a severe impairment despite the fact that Plaintiff ascribed no limitations to it. But the doctor did not evaluate Plaintiff's HTN beyond stating that it was a secondary medically determinable impairment; Dr. Panepinto's entire analysis and RFC determination related only to Plaintiff's RA. Given that Dr. Panepinto did not evaluate Plaintiff's HTN or base her RFC on it, we find the ALJ's determination that the opinion (which focused solely on Plaintiff's RA) was unreliable (because of the doctor's treatment of Plaintiff's HTN) is not supported by substantial evidence.

to perform light work. Moreover, although the ALJ based his determination in part on the fact that Dr. Panepinto did not have the benefit of knowing that Plaintiff did not follow up with her RA treatment, two other Agency doctors – Drs. Rabelo and Figueroa – did have that information when they reviewed and upheld Dr. Panepinto's opinion in June 2018. The medical evidence, in combination with Plaintiff's and the VE's testimony about the physical demands of her prior work and the medical opinions that Plaintiff's RA was severe enough to limit her to light work only, are in contrast to the ALJ's opinion that Plaintiff's RA was not severe. Given that the ALJ either misinterpreted or did not address or evaluate that evidence (in particular the medical opinions), we find that the ALJ's reasoning for dismissing Plaintiff's case at Step Two is not supported by substantial evidence. [11]

###### B. Appeals Council

Our second basis for remand concerns the treatment given by the Appeals Council to the additional medical records Plaintiff submitted after the ALJ issued his decision. "The Social Security Administration regulations require that [the Appeals Council] evaluate 'new and material evidence' in determining whether a case qualifies for review." *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012), citing 20 C.F.R. §§ 404.970(b), 416.1470. A district court's review of whether the Appeals Council erred in applying the "new and material" standard is *de novo,* but if the Appeals Council did not make a mistake in applying the regulation, its decision regarding whether new evidence is sufficient to overturn the ALJ's decision is discretionary and unreviewable. *See Perkins v. Chater*, 107 F.3d 1291, 1294 (7th Cir. 1997).

---

[11] Dr. Panepinto's opinion erroneously assumes that Plaintiff's previous job was performed at the light level, when in fact the VE testified that the nursing home position was medium as listed and as actually performed by Plaintiff. The ALJ does not mention the mistake, and while the issue is not directly before us because the ALJ never reached the question of Plaintiff's RFC, we note that proper consideration of Plaintiff's previous work could lend weight to her argument that her RA was severe enough to prevent her from performing functions listed in SSR 85-28 such as pushing, pulling and handling.

11

In this case, we are not persuaded that the Appeals Council properly considered whether the additional medical records Plaintiff submitted were new and material before denying review of the ALJ's decision. In its statement denying review, the Appeals Council noted that Plaintiff had submitted treatment records dated April 7, 2017, through February 21, 2019, from two different health care providers, and the Appeals Council then stated that it found "this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2.)

In *Farrell,* the Seventh Circuit interpreted similar language as that before us as stating that the Appeals Council rejected the new evidence as non-qualifying (*i.e.,* not new and material), triggering a *de novo* review of that limited question. 629 F.3d at 771; *see also Stepp v. Colvin,* 795 F.3d 711, 724-25 (7th Cir. 2015) (holding that "minimal information" provided by the Appeal Council in its denial of a request for review was insufficient to determine whether the Council properly applied the 'new and material' standard). In *Stepp,* the Appeals Council order denying review listed the additional evidence by name, but the Seventh Circuit held that this was not enough to conclude that the Appeals Council had accepted the evidence as new and material. *Id.* The Seventh Circuit then concluded that the information *was* new and material and thus remanded the case. *Id.* at 726.

The Appeals Council's treatment of the new records submitted by Plaintiff suffers from a similar problem: It does not explain whether the Appeals Council accepted and considered the evidence before deciding that it would not change the outcome (in which case the district court's review is limited), or whether the Appeals Council instead determined that the evidence was not new and material (i.e. non-qualifying), so that the Council did not even consider it. *See Farrell,* 629 F.3d at 771. The Appeals Council's ruling therefore leaves this Court with a firm conclusion that the Council failed to properly consider whether the evidence Plaintiff presented to the Council

was new and material. As in *Stepp*, the Council provided minimal information about its consideration of the evidence other than listing it by name. Moreover, some of the new evidence provided by Plaintiff is dated from before the ALJ's decision and thus would be subject to analysis of whether it is both new *and* material, while other evidence concerns medical examinations and tests that occurred in February 2019 – after the ALJ's decision – and thus would only be subject to the question of materiality. The Appeals Council's statement denying review does not differentiate between the two different time periods, as one would expect if it had properly considered whether the evidence was qualifying or not. Additionally, by declining to mark the additional evidence as an exhibit and making it part of the administrative record, the Appeals Council signaled that it did not find them material. In so finding we are guided in part by *Yerk v. Colvin,* No. 14 C 1216, 2015 WL 1966722, at *22 (E.D. Wis. May 1, 2015), where the court declined to follow *Farrell* in part because the Appeals Council *had* marked new evidence as exhibits, implying that it had found the evidence material and that its review of that decision was limited. Here, the Appeals Council specifically stated that it did not "exhibit" the additional evidence, signaling that it found it to be non-material.

We thus review *de novo* that Appeals Council decision finding the February 2019 records were not material (obviously they are "new"). Furthermore, we find that the records are in fact material to the question of severity of Plaintiff's RA. Although the Commission dismisses the February 2019 medical records as consisting "largely of ophthalmologic records with one rheumatology visit" (implying that the ophthalmology appointments are irrelevant), in fact those records show that Plaintiff was diagnosed with nodular scleritis, an eye condition associated with auto-immune disease. Given that the question before us is solely to determine the severity of Plaintiff's RA, we find that evidence of a new symptom associated with her impairment to be

13

material to that question. Whether the records – when properly considered – would change the outcome of the decision is not a question before us, but one to be considered on remand.

We reverse the decisions of both the ALJ and the Appeals Council, and therefore remand the case to the Agency for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment (D.E. 25) is denied and Plaintiff's motion for remand (D.E. 16) is granted.

**ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 22, 2022**